CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

March 17, 2025

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

|  |  |  |
|---|---|---|
| JAEON CHAVIS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | Civil Action No. ___1:25cv14___ |
| CORRECTIONS; | ) | |
| | ) | |
| JORDAN MURRAY, in his individual and | ) | |
| official capacity; | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ALFRED YATES, in his individual and | ) | |
| official capacity; | ) | |
| | ) | |
| DUSTIN W. HOLLAND, in his individual | ) | |
| and official capacity; | ) | |
| | ) | |
| AARON CORNETTE, in his individual | ) | |
| and official capacity; | ) | |
| | ) | |
| TANNER STUMPF, in his individual | ) | |
| and official capacity; | ) | |
| | ) | |
| and DOE OFFICERS 1, 2, 3, and 4, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

1

# I. INTRODUCTION

What should have been a simple request for help with a phone call became a desperate plea by Jaeon Chavis ("Mr. Chavis") for his life. Red Onion corrections officers kicked, punched, pepper sprayed, and nearly suffocated Mr. Chavis, all culminating in an officer ordering a canine to attack him. They demeaned him, calling him a "nigger" and a "fucking nigger crybaby." They tortured him — all for trying to call his daughter on her birthday.

The violent assault began when three officers piled onto his back — their combined weight crushing him as their knees dug deep into his ribs and neck. When Mr. Chavis told the officers he could not breathe, the officers escalated their attack by beating him and pepper spraying his eyes and face. Another officer ordered a canine to attack. The canine viciously tore into Mr. Chavis' leg. Finally, once Mr. Chavis' leg had been ravaged and the pepper spray had ceased, the canine detached its teeth — Mr. Chavis watched as large chunks of his flesh fell to the ground.

What followed was a series of further indignities: officers prolonged Mr. Chavis' suffering by arguing with medical staff about his need for emergency care, subjected him to multiple obscene and demeaning searches, and taunted him — mocking his pain, calling him racial slurs, and threatening him with further violence.

Mr. Chavis now brings this action to hold the officers accountable for violating his right to be free from excessive force under the Eighth Amendment, for their assault, battery, negligence, and intentional infliction of emotional distress under the laws of the Commonwealth of Virginia, and for retaliation under the First Amendment.

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C.

§ 1343(a)(3), as this action asserts claims arising under the United States Constitution and

federal civil rights laws of the United States.

2.      This Court has supplemental jurisdiction over Plaintiff's state and local law

claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the claims within the

original jurisdiction of this Court that they form part of the same case.

3.      Venue is proper under 28 U.S.C. § 1391(b)(1) because one or more of the

Defendants is subject to the Court's personal jurisdiction and under 28 U.S.C. § 1391(b)(2)

because the events or omissions giving rise to the claims occurred in Wise County.

## III. PARTIES

### A.  Plaintiff

4.      Plaintiff Jaeon Chavis ("Mr. Chavis") is a 37-year-old Black man and father of

three. At all times relevant to the events alleged in this Complaint he was a citizen of the

Commonwealth of Virginia.

5.      During the relevant time period, Mr. Chavis was incarcerated at Red Onion State

Prison ("Red Onion").

6.      In August 2024, Mr. Chavis was transferred to Wallens Ridge State Prison

("Wallens Ridge").

7.      Both prisons are operated by the Virginia Department of Corrections ("VDOC").

**B. Defendants**

8.       VDOC is the executive agency responsible for operating and maintaining correctional facilities within Virginia. VDOC oversees the operations of both Red Onion and Wallens Ridge. VDOC's headquarters and principal place of business are in Richmond, Virginia.

9.       Red Onion is located at 10800 H. Jack Rose Highway, Pound, VA 24279.

10.     Wallens Ridge is located at 272 Dogwood Drive, Big Stone Gap, VA 24219.

11.     Defendants Jordan Murray, Alfred Yates, and Dustin W. Holland (collectively, "Altercation Officers") are corrections officers at Red Onion, each serving in that capacity on July 23, 2023.

12.     Defendant Aaron Cornette is a corrections sergeant at Red Onion and served in that capacity on July 23, 2023.

13.     Defendant Tanner Stumpf is a corrections officer and member of the Patrol Canine Team at Red Onion, who was serving in that capacity on July 23, 2023.[1]

14.     Defendants Doe Officers 1, 2, 3, and 4 (collectively, "Defendants Doe") are corrections officers at Red Onion, each serving in that capacity, and were present in the A6 Day Pod on July 23, 2023 around the time of the incident that gives rise to these claims.

15.     At all times material hereto, all Defendants (collectively, "Defendant Officers") were acting under the color of state law, pursuant to their authority as officials, agents, contractors, or employees of VDOC.

---

[1] According to VDOC Operating Procedure 435.3, the Patrol Canine Team consists of trained corrections officers and their canines, which are trained to assist in maintaining security, custody, and control of the population of incarcerated people at Red Onion.

## IV. FACTUAL ALLEGATIONS

### A. VDOC Facilities Use Canines in a Disproportionate and Racialized Way

16.     From 2017 to 2022, there were 271 canine attacks on incarcerated individuals in VDOC facilities. Nationwide, during the same period, there were twenty-four attacks outside of Virginia.[2]

17.     During his incarceration in VDOC facilities, Mr. Chavis observed canine officers disproportionately targeting Black people while hurling racist comments and slurs at their victims.

### B. Defendant Officers Brutally Attacked Mr. Chavis on July 23, 2023 While He Posed No Threat and Offered No Resistance

#### 1. *Altercation Officers Violently Restrained and Choked Mr. Chavis*

18.     At or around 6:00 p.m. on July 23, 2023, Mr. Chavis was let out of his cell and attempted to use a wall phone in the A6 Day Pod ("the Pod") to call his daughter for her birthday.

19.     Mr. Chavis discovered that the phone was not operational.

20.     Mr. Chavis called out to the booth officer on duty, Defendant Murray, for assistance but received no verbal response.

21.     Mr. Chavis asked multiple times for help with the phone. Defendant Murray refused to assist Mr. Chavis, and told him, "I ain't calling nobody. You can go back to the cell if you can't call."

---

[2] Hannah Beckler, *Virginia uses attack dogs in prisons more than any other state. Now lawmakers want to crack down.*, BUSINESS INSIDER (Dec. 26, 2023), https://www.businessinsider.com/legislation-curb-patrol-dogs-in-virginia-prisons-2023-12.

22.     Mr. Chavis insisted that he wanted to speak to a lieutenant or sergeant to help fix the phone. Defendant Murray then ordered Mr. Chavis to "lockdown."[3]

23.     Defendants Yates and Holland then came to the entry of the Pod and demanded that everyone lockdown.

24.     Defendants Yates and Holland called Mr. Chavis and told him to follow them. Mr. Chavis feared that they would lead him alone to a corridor known as the "boulevard" to harm him. Upon information and belief, the boulevard contained a blind spot that the cameras cannot see. Mr. Chavis, aware of previous violent incidents at the "boulevard," told Defendants Yates and Holland, "I'll sit by the phone."

25.     Defendants Yates and Holland entered the Pod and quickly moved toward Mr. Chavis.

26.     Mr. Chavis put both hands in the air and asked Defendants Yates and Holland what he had done.

27.     Mr. Chavis saw Defendant Stumpf and another canine officer patrolling the floor with their canines and said, "I surrender. Don't let those dogs bite me."

28.     Defendant Yates instructed Mr. Chavis to turn around and place his hands behind his back.

29.     Mr. Chavis lowered his hands one at a time as directed and again told Defendants Yates and Holland that he surrendered.

30.     Defendant Yates instructed Mr. Chavis not to move. Mr. Chavis complied.

---

[3] According to the Virginia Department of Corrections Emergency Management Operating Procedure 075.1, a lockdown is defined as "a general confinement, either scheduled or unscheduled, of inmates . . . in assigned quarters and the stoppage of inmate . . . movement and normal activities in all or part of the facility during which time staff normally conduct thorough searches."

31.     Defendant Yates stood behind Mr. Chavis and handcuffed his left wrist. As Mr. Chavis brought down his right wrist to be handcuffed, Defendant Yates unexpectedly demanded, "stop resisting."

32.     Mr. Chavis looked back at Defendant Yates and responded, "I'm not resisting."

33.     At that moment, Defendant Yates swept Mr. Chavis' legs out from under him and slammed his body to the floor forcing his neck, face, and stomach into the concrete.

34.     Defendant Murray abandoned his position in the booth and, along with Defendant Holland, joined Defendant Yates in violently restraining Mr. Chavis.

35.     Altercation Officers kneeled on top of Mr. Chavis, restricting his breathing with hundreds of pounds of their combined body weight on his head, back, and neck.

36.     Mr. Chavis repeatedly told Altercation Officers, "I can't breathe."

37.     Altercation Officers attempted to force Mr. Chavis into a chokehold and dug their knees into Mr. Chavis' side and neck while twisting his arms behind his back. Mr. Chavis tucked his chin into his chest and moved his head to prevent Altercation Officers from choking him.

38.     One of the Altercation Officers, upon information and belief Defendant Yates, successfully placed Mr. Chavis into a chokehold, further restricting his breathing.

39.     Mr. Chavis believed he was going to die.

### 2. *Additional Officers Needlessly Escalated the Attack, Despite Mr. Chavis Being Confined*

40.     At that time, Defendant Cornette, Defendants Doe, Defendant Stumpf with his canine, and an additional patrol canine officer with their canine approached Mr. Chavis.

41.     Defendants Doe and, upon information and belief, Defendant Cornette punched and kicked Mr. Chavis while wearing military-style boots.

42.     Watching from their cells, some incarcerated individuals yelled out to Defendant Officers, "get off of him."

43.     Defendant Cornette blasted Mr. Chavis' eyes and face with pepper spray, further constraining his breathing.

44.     Mr. Chavis begged, "please don't let that dog bite me."

45.     Without issuing any prior warning to Mr. Chavis and despite the closer proximity of the other patrol canine officer, Defendant Stumpf ignored Mr. Chavis' pleas and ordered his canine to attack him, yelling, "get him."

46.     Mr. Chavis watched in horror as the canine ran toward him and violently attacked him by sinking its teeth into his left leg and ferociously shaking its head from side to side.

47.     Mr. Chavis felt as though he was being eaten alive.

48.     Mr. Chavis cried out as loud as he could, stating, "y'all are killing me."

49.     Altercation Officers, still on top of Mr. Chavis, taunted him with racial slurs and ordered him to "stop resisting."

50.     Defendant Cornette and Defendants Doe did not intervene and instead taunted Mr. Chavis as the canine viciously attacked him.

51.     Defendant Stumpf continued to provoke his canine by uttering phrases like "get him" and "get his ass."

52.     After several minutes, and while the canine's jaw was still clamped to Mr. Chavis' left leg, Defendant Officers ordered Mr. Chavis to stand up and walk.

53.     Since Mr. Chavis was unable to walk, Defendant Officers lifted Mr. Chavis while simultaneously detaching the canine from his leg.

54.     Mr. Chavis saw the canine take a chunk of his leg with it. His flesh fell to the floor.

55.     The gaping wounds left by the canine were as wide as Mr. Chavis' open hand.

56.     Defendant Officers boasted, "we got one" and "we did it again."

57.     Defendant Murray bragged, "[we] just fucked up another nigger again tonight."

### 3. *Defendant Officers Dragged Mr. Chavis to the Medical Unit While Shouting Racial Slurs at Him and Delayed Him from Receiving Medical Attention*

58.     Defendant Officers told Mr. Chavis, "shut up and walk, hop, or get dragged to medical."

59.     Defendant Officers dragged Mr. Chavis from the Pod to the medical unit, periodically forcing him to attempt to walk despite his obvious wounds.

60.     Mr. Chavis looked at his leg and thought it looked like ground taco meat. As he was dragged, he left behind a trail of blood and pieces of his detached flesh.

61.     Defendant Officers called Mr. Chavis a "nigger" and a "fucking nigger crybaby," and said, "[we] should have let the dog kill you" and "you keep crying you ain't gonna make it to the hospital."

62.     Mr. Chavis told Defendant Cornette that he intended to file a lawsuit.

63.     Defendant Cornette replied that he would "not be so lucky next time" if he did so.

64.     When he finally made it to the medical unit, Defendant Officers delayed Mr. Chavis' treatment by arguing with Nurse Practitioner Lea Holbrook ("Nurse Holbrook") about whether Mr. Chavis should go to the hospital.

65.     The medical staff indicated that this was one of the worst canine bites they had ever seen.

9

66.     Defendant Cornette insisted that Mr. Chavis did not need medical treatment and instead baselessly accused him of being intoxicated and on drugs.

67.     A corrections officer took pictures of Mr. Chavis' wounds for the Canine Bite Report Package.[4]

68.     An ambulance was ultimately called to take Mr. Chavis to Ballad Health Norton Community Hospital ("Ballad Health") for treatment.

### 4. Defendant Officers Unnecessarily Prolonged Mr. Chavis' Suffering by Subjecting Him to a Series of Humiliating and Painful Searches

69.     Before Mr. Chavis left the prison for Ballad Health, Defendant Officers wheeled him to another room.

70.     Once there, Mr. Chavis saw most Defendant Officers turn off their body cameras.

71.     Defendant Officers forced Mr. Chavis to strip out of his blood-soaked clothes and put on a clean prison uniform without any assistance, making him drag the fabric over his open wounds.

72.     Defendant Officers led Mr. Chavis to the body scanning machine. They then placed him in transport restraints — including metal belly chains, handcuffs, and ankle cuffs — and forced Mr. Chavis to balance on his right leg while in the machine.

73.     Defendant Cornette declared that he saw something inside Mr. Chavis on the scanner's screen, although no other officer commented on seeing anything. Upon information and belief, Defendant Cornette fabricated the need for a second screening in order to prolong Mr. Chavis' suffering.

---

[4] Operating Procedure 435.3, Section XVIII requires VDOC corrections officers to document all instances of canine engagements.

74.     Mr. Chavis was then taken to a room where he was again forced to painfully remove his clothes without assistance.

75.     Once Mr. Chavis was undressed, Defendant Cornette ordered, "bend over, boy . . . spread your ass. Let me see that ass."

76.     Mr. Chavis attempted to squat, but fell over because he was unable to put weight on his disfigured left leg; he eventually struggled through the pain to do as Defendant Cornette demanded.

77.     No Defendant Officer found any contraband inside of Mr. Chavis.

78.     Mr. Chavis felt humiliated, targeted, and sexually harassed by Defendant Cornette's comments and actions.

79.     Mr. Chavis struggled to get dressed a second time, which required him to balance on his torn-open leg.

80.     Defendant Officers forced Mr. Chavis to go through the body scanner again. Defendant Officers found nothing inside of Mr. Chavis.

81.     As Mr. Chavis was wheeled to the ambulance, Defendant Officers called him a "crybaby" and a "crybaby nigger."

82.     While waiting for the ambulance, a corrections officer, upon information and belief a Defendant Officer, threatened Mr. Chavis that if he spoke with anyone about the canine attack he would be considered a snitch and would "be taken care of" upon return.

### 5.  *Mr. Chavis' Wounds Continued to Cause Him Excruciating Pain Through the Night and into the Next Morning*

83.     While in the ambulance, one of the EMTs told Mr. Chavis that it was a miracle the canine did not puncture a major artery during the attack.

11

84.     At the hospital, nurses checked Mr. Chavis' vitals, drug tested him, and sent him for an x-ray. No drugs or alcohol were found in Mr. Chavis' system.

85.     After being discharged from Ballad Health at or around 3:00 a.m. on July 24, 2023, Mr. Chavis was taken back to Red Onion, wheeled to a medical unit cell, and placed in bed.

86.     Mr. Chavis fell asleep and experienced vivid nightmares about the attack.

87.     Upon waking up, he realized that he had urinated and defecated in his sleep. The sheets were soaked with blood from the wounds on his leg.

88.     Nurse Holbrook unwrapped his bandages, examined his leg, and said that the wound was so deep she could "fit almost [her] whole pinkie [finger] in [it]."

### 6. *After Filing a Grievance, Mr. Chavis Learned that He Was Subject to Fabricated Disciplinary Charges*

89.     On July 26, 2023, Mr. Chavis submitted a grievance about the incident in which he stated that he was attacked by Defendant Yates and other Defendant Officers.

90.     On or around July 29, 2023, Defendant Holland approached Mr. Chavis and told him that he did not know why Defendant Stumpf let his canine loose on him, and that the use of the canine and the number of officers who responded was unnecessary because Mr. Chavis had put his hands up.

91.     Defendant Holland also informed Mr. Chavis about a disciplinary charge accusing him of biting Defendant Yates in the leadup to the canine attack.

92.     Mr. Chavis did not bite Defendant Yates at any point during the attack.

93.     Defendant Holland told Mr. Chavis that he knew that he had not bitten Defendant Yates.

12

94.    Defendant Holland stated that he had viewed the security camera footage of the incident. While he said the footage looked ambiguous, Defendant Holland told Mr. Chavis that he believed Defendant Yates fabricated the charge.

95.    Some time after the conversation with Defendant Holland but before September 26, 2023, Mr. Chavis was subject to a disciplinary hearing that included a charge alleging Mr. Chavis bit Defendant Yates.

96.    Upon information and belief, this charge was based on false accusations Defendant Yates made against Mr. Chavis in response to his grievances.

97.    The hearing officer acknowledged that there was no evidence to support the charge other than Defendant Yates' word at the hearing.

98.    The hearing officer told Mr. Chavis that Defendant Yates' word would be taken over that of Mr. Chavis and, therefore, subjected him to disciplinary action.

99.    On September 26, 2023, Mr. Chavis submitted a grievance stating that Defendant Yates lied at the disciplinary hearing.

### 7.  *Mr. Chavis Lives with Lasting Physical, Mental, and Emotional Injuries from the Attack*

100.    Mr. Chavis still experiences pain that keeps him up at night as a result of nerve damage from the bite wounds.

101.    Mr. Chavis has a limited range of motion and frequently experiences numbness in his left leg, often giving him trouble standing without assistance.

102.    Mr. Chavis continues to suffer from Post-Traumatic Stress Disorder ("PTSD"), insomnia, and depression.

103.    In the months that followed the attack, Mr. Chavis had nightmares every night and would jolt out of his sleep in a cold sweat if he heard dogs barking or loud slamming noises during the night.

104.    While he remained at Red Onion, Mr. Chavis lived in fear each time he saw Defendant Officers that they would attack him again and that he would not survive the next time.

## V. CLAIMS FOR RELIEF

### Claim I: Excessive Force in Violation of the Eighth Amendment
U.S. Const. Amend. VIII; 42 U.S.C. § 1983
*Against Defendant Officers Murray, Yates, Holland, Cornette, and Stumpf, and Defendants Doe Officers 1, 2, 3, and 4, in their individual and official capacities*

105.    Mr. Chavis adopts and incorporates the foregoing paragraphs as if fully set forth herein.

106.    At all times relevant to this case, Defendant Officers acted under color of state law pursuant to their authority as officials or employees of Red Onion.

107.    As an incarcerated individual, Mr. Chavis has a constitutional right under the Eighth Amendment to be free from cruel and unusual punishment, including the right to be free from excessive force at the hands of corrections officers.

108.    Defendant Altercation Officers violated Mr. Chavis' right to be free from excessive force when they pinned him under their combined body weight while the other Defendant Officers kicked, punched, pepper sprayed, and ordered a canine to attack Mr. Chavis, despite Mr. Chavis complying with their orders.

109.    Defendant Altercation Officers' force was objectively more than de minimis as their continuous suffocating, kicking, and punching of Mr. Chavis was sufficiently serious and likely to cause injury.

110.     Defendant Altercation Officers' actions were not a good-faith effort to protect physical safety or maintain prison order as they could not have reasonably believed that he was a threat to any of the five or more corrections officers or any other incarcerated person. Mr. Chavis had already been restrained, was outnumbered by the officers, and was complying with their orders. Instead, Defendant Altercation Officers' actions were carried out maliciously and sadistically for the sole purpose of causing harm to Mr. Chavis.

111.     Defendants Doe violated Mr. Chavis' right to be free from excessive force when they punched and kicked him without cause after he was already restrained by Altercation Officers and complying with their orders.

112.     Defendants Doe's use of force was objectively more than de minimis as kicking and punching Mr. Chavis while he had been restrained was sufficiently serious and likely to cause injury.

113.     Defendants Doe's actions were not a good-faith effort to protect safety or maintain prison order as they could not have reasonably believed that he posed a threat to any of the five or more corrections officers or any other incarcerated person. Mr. Chavis was already handcuffed, in a chokehold, pinned under the weight of Altercation Officers, and outnumbered when they joined the attack. Instead, Defendants Doe punched and kicked Mr. Chavis maliciously and sadistically for the sole purpose of causing him harm.

114.     Defendant Cornette violated Mr. Chavis' right to be free from excessive force when he joined the attack and pepper sprayed Mr. Chavis in his eyes and face without cause.

115.     Defendant Cornette's use of force was objectively more than de minimis as pepper spraying Mr. Chavis was sufficiently serious and likely to cause injury.

15

116.    Defendant Cornette's actions were not a good-faith effort to protect physical safety or maintain prison order as he could not have reasonably believed that he posed a threat to any of the five or more corrections officers or any other incarcerated person. Mr. Chavis was outnumbered, restrained, in a chokehold, pinned under the weight of Altercation Officers, and fully complying with their orders when Defendant Cornette joined the attack. Instead, Defendant Cornette acted maliciously and sadistically to exacerbate Defendant Officers' force and cause Mr. Chavis additional harm.

117.    Defendant Stumpf violated Mr. Chavis' right to be free from excessive force when he ordered his canine to attack Mr. Chavis without cause and failed to separate his canine from Mr. Chavis' leg or temper the severity of its attack, even though Mr. Chavis remained restrained and compliant with Defendant Officers' orders.

118.    Defendant Stumpf's use of force was objectively more than de minimis as ordering the canine — whose teeth can bite through sheet metal[5] — to attack Mr. Chavis, and failing to restrain the canine as it violently tore into Mr. Chavis' flesh, was sufficiently serious and caused significant injury.

119.    Defendant Stumpf's actions were not a good-faith effort to protect physical safety or maintain prison order as he could not have reasonably believed that he posed a threat to any of the five or more corrections officers or any other incarcerated person. Mr. Chavis had already been restrained, was outnumbered by the officers, and was complying with their orders. Instead, Defendant Stumpf acted maliciously and sadistically to exacerbate Defendant Officers' force and cause Mr. Chavis additional harm.

---

[5] Beckler, *supra* note 2. Upon information and belief, all patrol canine officers are trained to understand the severity of a canine bite and the degree to which it would cause significant bodily injury.

120.    Because of Defendant Officers' needless and excessive use of force in violation of his Eighth Amendment rights, Mr. Chavis has suffered severe and permanent physical injuries and has endured emotional, mental, and psychological pain and suffering.

### Claim II: Civil Assault
Virginia Common Law
*Against VDOC, Defendant Officers Murray, Yates, Holland, Cornette, and Stumpf, and Defendants Doe Officers 1, 2, 3, and 4, in their individual and official capacities*

121.    Mr. Chavis adopts and incorporates the above paragraphs as if fully set forth herein.

122.    At all times relevant to this case, Defendant Officers acted within the scope of their employment duties, and their conduct is thus imputable to VDOC.

123.    Defendant Altercation Officers intended to cause severe physical injury to Mr. Chavis when they crushed him with their combined body weight, and kicked, choked, and punched him.

124.    Defendant Altercation Officers knew that pinning Mr. Chavis down under their combined body weight, placing him in a chokehold, and punching and kicking him was likely to make Mr. Chavis fear further injury, especially as he repeatedly told them that he could not breathe.

125.    Defendant Altercation Officers acted with malice by violently restraining and attacking him without cause, and they had total control and custody over him once he laid handcuffed on the floor. Defendant Altercation Officers also acted with malice by calling Mr. Chavis racial slurs and keeping Mr. Chavis pinned to the ground while other Defendant Officers escalated the attack.

17

126.    Defendants Doe intended to cause severe physical injury to Mr. Chavis when they kicked and punched him.

127.    Defendants Doe caused Mr. Chavis to fear further imminent battery by repeatedly kicking and punching him. Mr. Chavis repeatedly begged them to stop.

128.    Defendants Doe acted with malice as they attacked Mr. Chavis without cause, since he was already laying face down, handcuffed, and pinned under the weight of Altercation Officers. Defendants Doe also acted with malice by calling Mr. Chavis racial slurs and taunting him throughout the attack.

129.    Defendant Cornette intended to cause severe physical injury to Mr. Chavis by pepper spraying him directly in his eyes and face.

130.    Defendant Cornette caused Mr. Chavis to reasonably fear further imminent battery when he pepper sprayed Mr. Chavis' eyes and face without cause or provocation.

131.    Defendant Cornette acted with malice when he joined and escalated the attack on Mr. Chavis, who was already restrained and suffocating, and insulted him with taunts and racial slurs.

132.    Defendant Stumpf intended to cause severe physical injury to Mr. Chavis by ordering his canine to bite Mr. Chavis' leg while he was on the ground in a chokehold, pinned under the body weight of Altercation Officers, and complying with their orders.

133.    As soon as Mr. Chavis saw and heard Defendant Stumpf's canine, he reasonably feared that he would suffer severe and imminent battery, and begged Defendant Officers to not let the canine bite him. Mr. Chavis' fear of imminent battery only increased as the canine began to viciously tear into his flesh; Mr. Chavis feared that Defendant Officers and Defendant Stumpf's canine would kill him.

134.    Defendant Stumpf acted with malice as he repeatedly ordered his canine to continue biting Mr. Chavis with commands of "get him" and "get his ass." Defendant Stumpf did not relent even as Mr. Chavis yelled, "y'all are killing me."

135.    As a direct result of Defendant Officers' tortious conduct, Mr. Chavis suffered severe and permanent physical injuries and has endured emotional, mental, and psychological pain and suffering.

### Claim III: Civil Battery
Virginia Common Law
*Against VDOC, Defendant Officers Murray, Yates, Holland, Cornette, and Stumpf, and
Defendants Doe Officers 1, 2, 3, and 4, in their individual and official capacities*

136.    Mr. Chavis adopts and incorporates the above paragraphs as if fully set forth herein.

137.    At all times relevant to this case, Defendant Officers acted within the scope of their employment duties, and their conduct is thus imputable to VDOC.

138.    Defendant Altercation Officers knowingly and intentionally caused harmful and offensive contact with Mr. Chavis' person. Specifically, Defendant Altercation Officers intentionally slammed Mr. Chavis to the ground, crushed him with their body weight, and punched, kicked, and choked him.

139.    Defendant Altercation Officers were aware that their contact with Mr. Chavis' person was unwanted and harmful as he persistently pleaded with them to stop and told them that he could not breathe.

140.    Defendant Altercation Officers knew that the level of force they were applying was unreasonable because Mr. Chavis was restrained and was complying with their orders throughout the entire interaction.

19

141.    Defendants Doe knowingly and intentionally caused harmful and offensive contact with Mr. Chavis' person when they kicked and punched him while he was restrained and defenseless.

142.    Defendants Doe were aware that kicking and punching Mr. Chavis' person was unwanted and harmful, and Mr. Chavis begged them to stop.

143.    Defendants Doe knew that the level of force they were applying was unreasonable because Mr. Chavis was restrained and not resisting throughout the entire interaction.

144.    Defendant Cornette knowingly and intentionally caused harmful and offensive contact to Mr. Chavis' person by pepper spraying him directly in his eyes and face.

145.    Defendant Cornette knew that pepper spraying Mr. Chavis' eyes and face was unwanted and harmful.

146.    Defendant Cornette knew that the level of force he was applying was unreasonable because Mr. Chavis was restrained and not resisting throughout the entire interaction.

147.    Defendant Stumpf knowingly and intentionally caused harmful and offensive contact to Mr. Chavis by ordering his canine to bite Mr. Chavis' leg. Once the canine had bitten into Mr. Chavis' leg, Defendant Stumpf ordered it to continue biting him with commands of, "get him" and "get his ass."

148.    Defendant Stumpf knew that his contact with Mr. Chavis' person was unwanted and harmful as Mr. Chavis was already fully restrained and pleading, "please don't let that dog bite me." As Defendant Stumpf's canine tore into Mr. Chavis' leg, Defendant Stumpf could hear Mr. Chavis cry out in pain, "y'all are killing me." Still, Defendant Stumpf failed to separate his canine from Mr. Chavis' leg or temper the severity of its attack on Mr. Chavis.

149.    Defendant Stumpf knew that the level of force he applied was unreasonable because Mr. Chavis was fully restrained before he directed his canine to attack.

150.    As a direct result of Defendant Officers' tortious conduct, Mr. Chavis suffered severe and permanent physical injuries and has endured emotional, mental, and psychological pain and suffering.

### Claim IV: Willful and Wanton Negligence
Virginia Common Law
*Against VDOC, Defendant Officers Murray, Yates, Holland, Cornette, and Stumpf, and Defendants Doe Officers 1, 2, 3, and 4, in their individual and official capacities*

151.    Mr. Chavis adopts and incorporates the above paragraphs as if fully set forth herein.

152.    At all times relevant to this case, Defendant Officers acted within the scope of their employment duties, and their conduct is thus imputable to VDOC.

153.    Virginia and federal law impose upon Defendant Officers a duty to exercise reasonable care to protect Mr. Chavis' health and safety.

154.    Defendant Altercation Officers breached their duty to exercise reasonable care when they placed their combined body weight on Mr. Chavis' head, back, and neck and forced him into a chokehold — staying in that position as other Defendant Officers escalated the attack — as well as when they kicked and punched him.

155.    Defendant Altercation Officers acted in conscious disregard of Mr. Chavis' rights because they were aware that Mr. Chavis posed no threat to any of the five or more corrections officers or any other incarcerated person, was complying with their orders, could not breathe, and that their conduct would likely result in injury to him.

156.    Defendants Doe breached their duty to exercise reasonable care when they intentionally kicked and punched Mr. Chavis while he was already handcuffed, in a chokehold, and pinned under the weight of Altercation Officers.

157.    Defendants Doe acted in conscious disregard of Mr. Chavis' rights because they were aware that he was restrained under the weight of Altercation Officers, was complying with their orders and did not pose a threat to any corrections officer or any other incarcerated person, and that their conduct would likely result in injury to Mr. Chavis.

158.    Defendant Cornette breached his duty to exercise reasonable care when he intentionally blasted pepper spray into Mr. Chavis' eyes and face.

159.    Defendant Cornette knew that Mr. Chavis posed no threat to any corrections officer or incarcerated person while he was handcuffed, face down on the floor, and not resisting.

160.    Defendant Cornette acted in conscious disregard of Mr. Chavis' rights and with reckless indifference to the consequences of his conduct because he was aware that pepper spraying Mr. Chavis would likely cause injury to him.

161.    Defendant Stumpf breached his duty to exercise reasonable care when he used his canine to attack Mr. Chavis and continued to escalate the attack by encouraging his canine with commands of "get him" and "get his ass."

162.    Defendant Stumpf knew that Mr. Chavis posed no threat to any corrections officer or incarcerated person while he was handcuffed, face down on the floor, and not resisting.

163.    Defendant Stumpf acted in conscious disregard for Mr. Chavis' rights and with reckless indifference to the consequences of his conduct because he knew or should have known that ordering his canine to attack Mr. Chavis while he was unable to defend himself would likely cause injury to Mr. Chavis.

164.    Defendant Stumpf acted in conscious disregard for Mr. Chavis' rights and with reckless indifference to the consequences of his conduct because he knew or should have known that commanding his canine to "get him" and "get his ass" would likely cause his canine to inflict even greater injury on Mr. Chavis.

165.    As a direct and proximate result of the negligence of Defendant Officers, Mr. Chavis suffered severe and permanent physical pain and suffering, emotional pain and suffering, and persisting mental distress.

## Claim V: Intentional Infliction of Emotional Distress
Virginia Common Law
*Against VDOC, Defendant Officers Murray, Yates, Holland, Cornette, and Stumpf, and Defendants Doe Officers 1, 2, 3, and 4, in their individual and official capacities*

166.    Mr. Chavis adopts and incorporates the above paragraphs as if fully set forth herein.

167.    Defendant Altercation Officers intentionally and recklessly caused Mr. Chavis to suffer severe emotional distress by violently slamming Mr. Chavis to the ground, suffocating him under their combined body weight, digging their knees into his head, back, and neck, forcing him into a chokehold, punching and kicking him, and trapping him helplessly in that position as other Defendant Officers escalated the attack.

168.    Defendant Altercation Officers' outrageous and intolerable conduct offends every standard of decency and morality as it was completely unjustified: Mr. Chavis complied with their orders and posed no threat to any other corrections officer or incarcerated person.

169.    Defendants Doe intentionally and recklessly caused Mr. Chavis to suffer severe emotional distress by intentionally kicking and punching him without cause while he laid helplessly on the ground under the weight of Altercation Officers.

170.    Defendants Doe's actions were unjustified as Mr. Chavis was complying with
orders and did not pose a threat to any corrections officer or incarcerated person. The conduct of
Defendants Doe was outrageous and intolerable and offends every standard of decency and
morality.

171.    Defendant Cornette intentionally and recklessly caused Mr. Chavis to suffer
emotional distress by mocking him with racial slurs and insults and sexually humiliating him.
Defendant Cornette, as a trained law enforcement officer, knew or should have known that
instructing Mr. Chavis, "spread your ass. Let me see that ass," during a strip search, coupled with
the physical pain and humiliation of requiring Mr. Chavis to unnecessarily stand on his half eaten
leg, squat, and expose himself to Defendant Cornette, would leave lasting emotional scars on
him.

172.    By mocking Mr. Chavis with insults and racial slurs, and forcing Mr. Chavis to
strip, squat, and expose himself, Defendant Cornette's actions were outrageous and intolerable
and offend against every standard of decency and morality.

173.    Defendant Stumpf intentionally and recklessly caused Mr. Chavis to suffer severe
emotional distress by ordering his canine to attack Mr. Chavis with full awareness that this could
cause both physical and emotional harm. Defendant Stumpf, as a trained patrol canine officer,
knew or should have known that purposely attacking Mr. Chavis with his canine would leave
long-term emotional scarring on him. Even as Defendant Stumpf heard Mr. Chavis crying
"you're killing me," he intentionally provoked the canine further despite knowing the obvious
emotional trauma this would cause.

174.    By ordering his canine to attack Mr. Chavis, who did not pose a threat to any
corrections officer or incarcerated person, and who was complying with orders, Defendant

24

Stumpf's outrageous and intolerable conduct offends every standard of decency and morality. Defendant Stumpf continued to offend every standard of decency and morality by encouraging his canine to tear even further into Mr. Chavis' leg as he laid helplessly on the ground and pleading in agony.

175.    The emotional distress that Mr. Chavis suffers as a direct result of Defendant Officers' actions is severe. Mr. Chavis' persistent emotional trauma prevents him from sleeping through most nights as he is forced awake in cold sweats if he hears the bark of canines or loud noises. When Mr. Chavis can sleep, he is forced to relive the night of the attack through vivid nightmares and night terrors. For a year following the attack, Mr. Chavis' emotional trauma forced him to constantly fear losing the use of his legs.

**Claim VI: Retaliation in Violation of the First Amendment**
U.S. Const. Amend. I; 42 U.S.C. § 1983
*Against Defendant Officer Yates, in his individual and official capacity*

176.    Mr. Chavis adopts and incorporates the above paragraphs as if fully set forth herein.

177.    On July 26, 2023, Mr. Chavis engaged in a protected First Amendment activity by filing a grievance against certain Defendant Officers, including Defendant Yates.

178.    On or around July 29, 2023, Mr. Chavis was subject to a disciplinary charge based on Defendant Yates accusing Mr. Chavis of actions he knew to be false — namely, that Mr. Chavis bit Defendant Yates.

179.    The disciplinary charge is false because Mr. Chavis did not bite Defendant Yates.

180.    Due to the temporal proximity being a matter of days between the filing of Mr. Chavis' grievance and the disciplinary charges, the false charges were brought against Mr. Chavis in retaliation for filing a grievance about the attack.

## VI. DAMAGES

Plaintiff, Jaeon Chavis, has suffered the following injuries for which he seeks full compensation under the law:

1) Significant physical injuries and permanent nerve damage, which has left Mr. Chavis without the full usage of his limbs, resulting from Defendants attacking him and ordering a canine on him;

2) Recurring pain and suffering;

3) Lasting mental and emotional distress.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that the Court:

DECLARE that Defendants' conduct violated the First and Eighth Amendments to the United States Constitution, and Virginia common law through the torts of assault, battery, willful and wanton negligence, and intentional infliction of emotional distress;

ENTER JUDGMENT holding the appropriate Defendants jointly and severally liable to Plaintiff for all relief available under 42 U.S.C. § 1983;

AWARD JUDGMENT holding the appropriate Defendants jointly and severally liable to Plaintiff for compensatory damages, punitive damages and other damages recoverable under the laws of the Commonwealth of Virginia;

AWARD Plaintiff his costs and reasonable attorney's fees; and

GRANT such other and further relief as the Court deems just and proper.

Dated: March 17, 2025                    Respectfully submitted,


                                         /s/ Joshua Erlich
                                         Joshua Erlich (VSB No. 81298)
                                         The Erlich Law Office PLLC
                                         1550 Wilson Boulevard, #700
                                         Arlington, VA 22209
                                         Tel: (703) 791-9087
                                         Fax: (703) 722-8114
                                         jerlich@erlichlawofice.com

                                         *Attorneys for Plaintiff*
                                         /s/Aderson Francois
                                         Aderson Francois (DC Bar No. 498544)
                                         (*pro hac vice pending*)
                                         Alexander Afnan (DC Bar No. 1742388)
                                         (*pro hac vice pending*)
                                         Nicole Rheault (DC Bar No. 1780028) (*pro
                                         hac vice pending*)
                                         Civil Rights Clinic
                                         Georgetown University Law Center
                                         600 New Jersey Avenue NW, Suite 352
                                         Washington, DC 20001
                                         (202) 662-6721
                                         (202) 813-0782
                                         (202) 671-6610
                                         aderson.francois@georgetown.edu
                                         alexander.afnan@georgetown.edu
                                         nicole.rheault@georgetown.edu

                                         Laila H. Ahmed
                                         Rio M. Dennis
                                         Sophie R. Gelber
                                         Douglas A. Wickham
                                         Civil Rights Clinic
                                         Georgetown University Law Center
                                         600 New Jersey Avenue NW, Suite 352
                                         Washington, DC 20001
                                         *Student Attorneys*